Walter PFANENSTIEL, Plaintiff,

v.

LING & COMPANY, INC., a Texas corporation, and Weeks-Hemphill Noyes, a corporation, Defendants.

Civ. A. No. CA–3–5572–D.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 3, 1974.

Thomas A. Melody, J. Dan Connelly, Dallas, Tex., for plaintiff.

H. Robert Powell, David F. Hunt, C. Richard White, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

This cause of action was brought by Walter Pfanenstiel (hereinafter "Pfanenstiel") pursuant to the Securities Acts of 1933 and 1934. Specifically, Pfanenstiel alleges that Ling & Company, Inc., (hereinafter "Ling") violated Regulation T of the Federal Reserve System, 12 C.F.R. 220.4(c)(7), which requires that a broker liquidate a customer's account in the event that a disputed account is not settled within seven full business days. Pfanenstiel also alleges that Ling and Hornblower & Weeks-Hemphill Noyes (hereinafter "Hornblower") violated the federal securities laws through their negligence in failing to maintain proper records of his account.

### The Facts

On December 19, 1968, Pfanenstiel orally ordered his broker at Hornblower to purchase 500 shares of stock of a company named Capitol Holding Corporation. The exact spelling of the name of this corporation was not known to Pfanenstiel and at that time Capitol Holding Corp., D. C., (hereinafter sometimes "Capitol") was the only stock publicly traded and available which was similar in name. Pfanenstiel's broker purchased 500 shares of Capitol Holding Corp. stock and the stock certificate was issued in Hornblower's name and held in Pfanenstiel's account. On the confirmation and on monthly statements transmitted to Pfanenstiel, Hornblower misspelled the name as "Capital Holding." Capital Holding Corp., a Delaware Corporation, (hereinafter sometimes "Capital") was not incorporated until March 1969 and its shares were not publicly traded until June 1969.

On June 27, 1969, Pfanenstiel transferred his account to Ling and at his request Hornblower transferred the 500 shares of Capitol stock to Ling. On the transmittal statement from Hornblower to Ling the stock was spelled "Capitol." In monthly statements sent by Ling to Pfanenstiel for June and July, 1969, Pfanenstiel was shown to have 500 shares of "Capitol Holding Corp" in his account. However the August and September, 1969, statements reflected that Pfanenstiel had 500 shares of "Capital Holding Corp., Ky." in his account.

In October of 1969, after hearing that Capital stock was selling at 22½ per share, Pfanenstiel called his broker at Ling to confirm the quotation and expressed a desire to sell his 500 shares. The broker questioned the identity of the stock actually owned and requested that Pfanenstiel review his records to determine if he owned Capitol or Capital stock. According to Pfanenstiel, it was after this discussion that he first discovered the various misspellings by Hornblower and Ling on his statements. On October 15, 1969, Ling executed a "sell" of 500 shares of Capital Holding Corporation, Ky. at 23⅝ but delivered 500 shares of Capitol Holding Corporation, D. C. The sum of $11,812.50 was credited to Pfanenstiel's account, of which $11,783.75 was withdrawn by Pfanenstiel. During this period of time Capitol was selling at 1½ per share and Capital was selling at $23 to $24 per share.

In February of 1970, Ling was informed by Merrill Lynch, Pierce, Fenner and Smith that the October 15 transaction was a "fail" since Capitol stock was delivered instead of Capital. Ling rescinded the transaction by crediting the Capitol stock to Pfanenstiel's account and requesting him to return the proceeds of the sale which had been withdrawn or to liquidate the other securities in his account to the extent necessary to cover that amount. Pfanenstiel refused to return the $11,783.75 and consequently in March of 1970 Ling froze his account which contained various other stocks. Ling has filed a counterclaim for the $11,783.75.

### Regulation T

Pfanenstiel alleges that Ling's failure to comply with Regulation T of the Federal Reserve System, 12 C.F.R. 220.4(c), creates a cause of action on his behalf against Ling. Regulation T was promulgated pursuant to Section 7 of the Securities Exchange Act of 1934 which prohibits brokers from extending credit to those customers who purchase or sell securities through special cash accounts. 15 U.S.C. § 78g (1964). A special cash account is an arrangement where a broker may:

> (i) Purchase any security for, or sell any security to, any customer, provided funds sufficient for the purpose are already held in the account or the purchase or sale is in reliance upon an agreement accepted by the creditor in good faith that the customer will promptly make full cash payment for the security and that the customer does not contemplate selling the security prior to making such payment.

> (ii) Sell any security for, or purchase any security from, any customer, provided the security is held in the account or the creditor is informed that the customer or *his principal owns the security and the purchase or sale is in reliance upon an agreement accepted by the creditor in good faith that the security is to be promptly deposited in the account.* 12 C.F.R. § 220.4 (emphasis added).

This regulation has been construed to require that when a broker sells a security for a customer in a special cash account without first having obtained the security and the security is not promptly delivered by the customer, then that broker must immediately liquidate the sale transaction by making delivery to the purchaser of stock from their own inventory or borrowed by them. Naftalin & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 469 F.2d 1166 (8th Cir. 1972).

Pfanenstiel contends that Ling's attempt to sell 500 shares of Capital stock when he did not own that stock was a credit transaction under the provisions of Regulation T. Pfanenstiel contends that in October of 1969 Ling should have discovered that he didn't own any Capital stock and immediately after the transaction in question his account should have been liquidated in accordance with Regulation T. After considering the evidence this court is of the opinion that Regulation T does not apply to the disputed transaction.

There is no evidence that Pfanenstiel had a "special cash account" with Ling. Pfanenstiel did not hold any Capital stock in his account, nor did Pfanenstiel inform Ling that he owned Capital stock *and* that the Capital stock would be promptly deposited by Pfanenstiel in his account pursuant to an agreement relied upon by Ling. The evidence reflects that Pfanenstiel was not attempting to make a short sale of stock that he did not possess in his account but that he was attempting to execute a sale of the 500 shares of stock which he bought in December of 1968. Thus this court is of the opinion that the transaction executed by Ling in October of 1969 was not an extension of credit as prohibited by 15 U.S.C. § 78g and that no cause of action arises pursuant to Regulation T. *See,* Gordon v. duPont Glore Forgan Corp., 487 F.2d 1260 (5th Cir. 1973).

### The Misrepresentations

Pfanenstiel also contends that Ling and Hornblower were negligent in that they failed to maintain proper records of the securities in his account and thereby misrepresented the identity of the stock which was purchased in December of 1968. This court is of the opinion that there has been no showing that these misrepresentations were part of a device, scheme or artifice to defraud Pfanenstiel.

Even assuming *arguendo* that these misrepresentations were part of a fraudulent scheme, there has been no showing that Pfanenstiel suffered any injury or detriment as a result of these misrepresentations. Pfanenstiel, according to his own testimony, did not know or care about the spelling of the stock he

purchased until October of 1969 when he heard that a company whose name sounded like Capitol Holding Corp. was selling for 22½ per share. There is no evidence that after that date he would have changed any of his investment decisions had he known that he actually owned Capitol Holding Corp., D. C., instead of Capital Holding Corp., Ky. Pfanenstiel's account was frozen after March 1, 1970, and he testified that by at least the end of that month, he discovered that he actually owned Capitol Holding Corp., D. C. At the beginning of March, the aggregate value of Pfanenstiel's account was $13,100 and at the end of that month the value was $13,037.50—a difference of $63.50 (a diminutive amount when it is considered that since October of 1969 Pfanenstiel had the use of the $11,812.50 which was mistakenly credited to his account for the sale of 500 shares of Capital stock).

During and at the end of March, at a time when Pfanenstiel knew that he owned Capitol instead of Capital stock, Ling proposed that he sell a sufficient amount of stock in his account to cover the debit balance or return the proceeds of the October 1969 sale. Exercising either of these options would have thawed his account. Nevertheless he refrained from doing so. The court is thus of the opinion that even if the alleged misrepresentations were part of a scheme to defraud Pfanenstiel, he could only have "capitolized" to the extent of $63.50, since he failed to mitigate his damages by liquidating his account.

### The Counterclaim

In its counterclaim, Ling seeks to recover the $11,783.75 which it erroneously paid to Pfanenstiel. In a customers agreement Pfanenstiel authorized Ling to sell his securities if he failed to meet any financial obligation or if he failed to keep his margin up to Ling's requirements. Ling discovered in February of 1970 that the October 1969 trade was a "fail" and realized that Pfanenstiel was obligated to return the proceeds of the transaction. At that time Ling had the right to liquidate the other securities in Pfanenstiel's account and to credit the proceeds against the $11,783.75 owed by Pfanenstiel. Since Ling failed to maintain accurate records of the securities held by Pfanenstiel and failed to liquidate Pfanenstiel's account in March of 1970 this court is thus of the opinion that Ling's counterclaim should be rejected. Gordon v. duPont Glore Forgan, Inc., 487 F.2d 1260 (5th Cir. 1973).

For the foregoing reasons this court is of the opinion that Pfanenstiel has failed to state a claim upon which relief can be granted under the Federal Securities Acts of 1933 or 1934 and relief pursuant to these statutes should be denied. Additionally, the court is of the opinion that the counterclaim asserted by Ling should also be denied. The foregoing shall serve as this court's findings of fact and conclusions of law. A judgment consistent with this opinion will be entered by the court.